UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cr-107-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| TWYJUAN DEMETRIC JENKINS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Early Termination of Probation/Supervised Release. (Doc. No. 112).

## I. BACKGROUND

On or about March 18, 2020, a federal grand jury sitting in the Charlotte Division of the Western District of North Carolina returned an indictment against Defendant, his brother Tyquis Jenkins, and friend Antrell Walker—alleging a conspiracy to commit aggravated identity theft and illegally acquire and possess firearms and ammunition in violation of 18 U.S.C. § 371; bank fraud in violation of 18 U.S.C. § 1344; making a false statement to acquire a firearm in violation of 18 U.S.C. § 922(a)(6); aggravated identity theft in violation of 18 U.S.C. § 1028A; and possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).

Defendant pled guilty on September 11, 2020 to conspiracy and one count of aggravated identity theft. He was sentenced on May 26, 2021 to 30 months' imprisonment, followed by a three-year term of supervised release. Defendant was ordered to pay a $200 special assessment fee (satisfied) and restitution jointly with his co-defendants in the amount of $75,150.00.[1]

---

[1] Jenkins was recently taken into federal custody from North Carolina state authorities where he has been serving a sentence for manslaughter. Tyquis Jenkins pled guilty to two counts of the

1

Defendant's term of supervised release began on or about February 2, 2022.

Over a two-year period between 2018 and 2020, Defendant and his co-conspirators used the stolen personal identifying information ("PII") of actual persons ("victims") to create identification cards in the victims' names, but with the co-conspirators' photographs. Defendant and his coconspirators then used these counterfeit identification cards and stolen identities to obtain over $95,000 in credit at a credit union, retail store chains, and car rental companies, and to acquire and pay for firearms and ammunition at shooting ranges. Victims included the State Employees Credit Union and several individual victims whose PII was stolen and compromised by Defendant and his conspirators.

According to Defendant's Pre-Sentence Report, he was serving a suspended sentence for obtaining property by false pretenses when he committed the offenses that led to his current conviction. Defendant violated the terms of his probation by failing to pay court-ordered fees and committing new offenses.

The U.S. Attorney's Office Financial Litigation Unit reports that Defendant and his codefendants' current restitution balance is approximately $70,000. From Defendant's release from house arrest in February 2022 until January 2023, he made six payments of $50 for a total of $300, but he missed the minimum court-ordered schedule on two months. In January 2023, Defendant entered into a restitution payment plan of $50 per month of which he has generally been current. Although Defendant has missed payments, he has made up for those months by paying more than the minimum in later months.

---

indictment on August 31, 2023 and is pending sentencing. Antrell Walker was sentenced to 37 months' imprisonment and three years supervised release. Walker's supervision was transferred to the Middle District of North Carolina on January 30, 2023.

The U.S. Probation Office reports that Defendant has maintained employment since commencing supervised release. He had two jobs and has submitted earnings statements for employment verification.[2] The Probation Officer met with Defendant several times at various job sites. Defendant has successfully completed the Code-a-Phone ("CAP") program since the start of supervision and all random urine samples yielded negative results. On January 20, 2023, this Court granted Defendant's request to travel on vacation to Cancun, Mexico with his family.

## II. DISCUSSION

The Court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Early release from supervised release is appropriate when the defendant has exhibited "exceptionally good behavior that makes the previously imposed term of supervised release 'either too harsh or inappropriately tailored to serve' general punishment goals." Folks v. United States, 733 F. Supp. 2d 649, 651 (W.D.N.C. 2010) (internal citation omitted). "One of the purposes of supervised release is to provide rehabilitation and oversight of the offender to deter their return to crime." Id. at 652. Consequently, "full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." Id. (quoting United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005)). If it were, then "the exception would swallow the rule." McKay, 352 F. Supp. 2d at 361. Ultimately, the decision whether to terminate a term of supervised release is within the

---

[2] In his pro se Request for Early Termination, Defendant reports that he left his part-time job to focus on parenting.

3

Case 3:20-cr-00107-MOC-DCK   Document 117   Filed 11/30/23   Page 3 of 5

Court's discretion. See United States v. Pregent, 190 F.3d 279, 283 (4th Cir. 1999) (noting that the phrase "the interest of justice" gives the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period).

The Government states that it has conferred with Defendant's probation officer, who has asserts that Defendant would benefit from continued supervision. The Court agrees that Defendant's motion should be denied at this time. First, the structure afforded by supervision has thus far allowed Defendant to successfully transition to civil society. Moreover, Defendant has only served a little more than half of his three-year supervised release sentence. Most importantly, Defendant still owes most of the restitution ordered by this Court. In his past state conviction for similar offenses, Defendant violated the terms of his probation by failing to pay court-ordered fees and committing new offenses.

In his pro se request for early termination of his supervised release, Defendant states that he wishes for his children to live with him and "take them places they have never been." However, he cites no reason that his supervised release would prevent him from achieving his parenting goals. Indeed, Defendant was permitted by this Court to take a vacation in Cancun. The Court agrees with the Government that continued supervision would assist Defendant in setting priorities that would benefit his children, prevent a relapse to his past behaviors, and ensure that he is current in his obligations to pay court-ordered restitution.

Is sum, the Court will deny Defendant's motion without prejudice, as the interests of justice do not support early release at this time.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Early Termination

of Probation/Supervised Release, (Doc. No. 112), is **DENIED** without prejudice.

Signed: November 30, 2023

Max O. Cogburn Jr
United States District Judge